<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM CROWLEY, : | Civil Action No. 19-8774 (JMV) |
| Petitioner, : | |
| v. : | **OPINION** |
| BRUCE DAVIS, : | |
| Respondent. : | |

**VAZQUEZ, District Judge:**

Petitioner is a state prisoner currently incarcerated at South Woods State Prison in Bridgeton, New Jersey. He is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (D.E. 1.) For the reasons explained below, the Court will deny the Petition and will not issue a certificate of appealability.

**I.    BACKGROUND**

The New Jersey Superior Court, Appellate Division, summarized the underlying circumstances of this case, on direct appeal:

> The fatal shooting of Pretlow occurred in the late evening of July 9, 1989. Earlier in the evening, defendant had been with his common-law wife, Ms. Daniels, who lived in a public housing complex in Elizabeth. Together, defendant and Daniels had a six-year-old son and had been together for nine years. One of defendant's friends, co-defendant Walter Rajoh Griggs, stopped by that evening to visit defendant, and he and defendant later left the apartment.
>
> Witnesses present at the scene where the fatal shooting occurred, identified defendant, Griggs, and Bobby Ray Davis, as the three men who approached the victim, who was speaking to a young woman, and surrounded him. The witnesses then saw the three men, all armed with hand guns, shoot the victim, who fell over. Some of the

witnesses were pre-and young teens, who knew defendant as the stepfather of their friend. Another witness, twenty-seven-year-old Ms. Graham, saw the three men in the courtyard with Pretlow and the young woman. Pretlow was also Graham's nephew. She knew defendant as an acquaintance of her uncle. When she heard gunshots, she looked out her bedroom window and saw defendant "running but also shooting towards First Street" and "returning fire to whoever was shooting at him." She saw defendant fall briefly, get up and then continue running.

In addition to statements to police, witnesses identified defendant, Griggs and Davis through photo arrays. Despite multiple bench warrants for his arrest, police were unable to apprehend defendant until October 19, 2008, when he was arrested in Buffalo, New York. At the time, he identified himself as William Harris, born June 9, 1944. Defendant's actual birthdate is July 1944.

A grand jury indicted defendant on charges arising out of Pretlow's death in September 2009. The indictment charged defendant with first-degree murder, *N.J.S.A.* 2C:11–3(a)(1) and/or (2) (count one); second-degree possession of a handgun for an unlawful purpose, *N.J.S.A.* 2C:39–4(a) (count two); and third-degree unlawful possession of a handgun without a permit, *N.J.S.A.* 2C:39–5(b) (count three). In a separate indictment, which the State and defense agreed would be prosecuted separately, the grand jury charged defendant with second-degree certain persons not to have weapons, *N.J.S.A.* 2C:39–7 (count one). The parties subsequently agreed that this indictment would be prosecuted as a fourth-degree offense.

The State's original case file no longer existed resulting in the State reconstructing it. Prior to trial, defendant moved to dismiss the murder indictment on the basis that the State's destruction of its file violated his right to due process. The court denied the motion.

The State also filed a motion prior to trial seeking to admit evidence that defendant fled to another state following the fatal shooting. The court granted the motion.

The jury convicted defendant of all charges. In a separate trial, the jury found defendant guilty of the charge in the second indictment. At sentencing, the court imposed an aggregate sentence of life imprisonment with a thirty-year period of parole ineligibility on the first indictment. In connection with the second indictment, the court imposed a consecutive eighteen-month sentence, with an eighty-five

percent period of parole ineligibility, under the No Early Release Act (NERA), *N.J.S.A.* 2C:43:7.2.

*State v. Crowley*, No. A-4547-11T3, 2014 WL 3055959, at *1–2 (N.J. Super. Ct. App. Div. July 8, 2014) (footnote omitted). The Appellate Division affirmed the convictions, *id*. at 9*, and the Supreme Court of New Jersey denied Petitioner's petition for certification. *State v. Crowley*, 103 A.3d 268 (N.J. 2014).

Petitioner later filed a petition for post-conviction relief ("PCR"), and the PCR court denied the petition. *State v. Crowley*, No. A-0649-16T2, 2018 WL 286750, at *1 (N.J. Super. Ct. App. Div. Jan. 5, 2018). The Appellate Division affirmed on PCR appeal, *id*. at *1, and the Supreme Court of New Jersey denied Petitioner's PCR petition for certification. *State v. Crowley*, 185 A.3d 876 (N.J. 2018).

Petitioner filed the instant Petition in March of 2019. (D.E. 1.) Respondent filed an Answer opposing relief, (D.E. 10), and Petitioner did not file a reply. In November of 2019, Petitioner moved for an indefinite stay and abeyance of this matter due to health issues. (D.E. 14.) The Court denied the motion, but granted Petitioner, in total, approximately nine additional months to file his reply. (D.E. 16.) As of the date of this Opinion, Petitioner has not filed a reply.

The Court construes[1] Petitioner to raise the following claims:

1. The trial court should have charged the jury with attempted murder as a lesser included offense. (D.E. 1-2, at 33.)

2. The trial court should not have issued a flight charge. (*Id*. at 35.)

3. The State violated his due process rights by destroying or losing valuable evidence. (*Id*. at 42.)

---

[1] Petitioner did not include headings to describe his arguments.

## II.     STANDARD OF REVIEW

Section 2254(a) permits a court to entertain claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioners have the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts in habeas cases must give considerable deference to the determinations of state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Moreover, AEDPA deference applies even when there has been a summary denial. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) (citation omitted).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000))). "Under the contrary to clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13 (internal quotation marks

4

omitted). As to § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen*, 563 U.S. at 180–81.

Where a petitioner seeks habeas relief pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the court of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "fairly present all federal claims to the highest state court before bringing them in a federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365–66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007)). If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing

5

of "cause and prejudice" or a "fundamental miscarriage of justice." *Id.* at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion.").

### III. ANALYSIS

#### A. Jury Instruction Claims

##### a. Attempted Murder Jury Instruction

First, under Ground One, Petitioner contends that the trial court erred by failing to charge the jury on the lesser included offense of attempted murder. Broadly construing Petitioner's arguments, he appears to allege that although he shot at the victim, it was one of his co-defendants that had fired the fatal shot. (D.E. 1-2, at 33–34.) As Petitioner did not request the charge at trial, Petitioner argues that the trial court should have *sua sponte* charged the jury on attempted murder.

On habeas review, a district court must review the last reasoned state court decision on each claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on direct appeal. The Appellate Division denied the claim as follows:

> "An essential ingredient of a fair trial is that a jury receive adequate and understandable instructions." *State v. Afanador,* 151 *N.J.* 41, 54 (1997). "Correct jury instructions are 'at the heart of the proper execution of the jury function in a criminal trial.'" *Ibid.* (quoting *State v. Alexander,* 136 *N.J.* 563, 571 (1994)). Accordingly, "[e]rrors ... [in jury instructions] are poor candidates for rehabilitation" under the plain error rule. *State v. Simon,* 79 *N.J.* 191, 206 (1979).

Where, as here, no request for the lesser-included charge was made, the "trial court has an independent obligation to instruct on [a] lesser-included charge [ ] when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense." *State v. Jenkins,* 178 *N.J.* 347, 361 (2004). "[C]learly indicate[d]" facts means that "the evidence is jumping off the page[.]" *State v. Denofa,* 187 *N.J.* 24, 42 (2006).

"*N.J.S.A.* 2C:1–8d[ ] codifies the common-law rule that an accused may be convicted of a lesser-included offense." *State v. Ruiz,* 399 *N.J.Super.* 86, 95 (App.Div.2008). "Attempted murder is an included offense of homicide." *State v. Reddish,* 181 *N.J.* 553, 626 (2004) (citing *N.J.S.A.* 2C:1–8(d)(2)). Attempted murder requires greater culpability than murder itself:

> Although an actor may be guilty of murder if he or she intended to kill or was practically certain that his or her actions would cause or would be likely to cause death, the actor is guilty of attempted murder only if he or she actually intended the result, namely, death, to occur.

[*State v. Rhett,* 127 *N.J.* 3, 7 (1992).]

Here, there was no clear indication of a rational basis for the jurors to acquit defendant of the murder charge but still convict him of the proposed lesser offense of attempted murder. A defendant "is guilty of attempted murder only if he . . . actually intended the result, namely, death to occur." *Rhett, supra,* 127 *N.J.* at 7. Criminal attempt is defined as follows:

> A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he [or she] ... [p]urposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be[.]"

[*N.J.S.A.* 2C:5–1(a)(1) ].

If defendant and others intended to kill Pretlow by shooting him and he survived, an attempted murder charge would have been appropriate. However, because the shooting caused Pretlow's death, defendant's conduct was incompatible with the elements of attempted murder. *See State v. Gilliam,* 224 *N.J.Super.* 759, 763

7

(App .Div.1988). Moreover, there was no clear indication of a rational basis for the jurors to acquit defendant of murder as either a principal or an accomplice. The evidence was that at least three shots were fired at Pretlow. Three witnesses placed defendant within shooting range. Two of those witnesses recalled that defendant was armed and stood on the left side of Pretlow's body, where, according to the medical examiner's testimony, the fatal shot was fired. Given those circumstances, the jury could have found defendant guilty of murder as a principal because there was substantial credible evidence in the record to support the conclusion that he delivered the fatal shot.

Additionally, even if defendant did not fire the fatal shot that entered the left side of Pretlow's head, the jury was permitted to find him guilty of accomplice-liability murder. To be guilty of accomplice-liability murder under *N.J.S.A.* 2C:11–3(a)(1) and (2), "the defendant must intend for the principal to engage in the killing, and the defendant must act with purpose or knowledge in promoting or facilitating the killing." *State v. Norman,* 151 *N.J.* 5, 32 (1997). *See also N.J.S.A.* 2C:2–6(c) (defining accomplice). If the jury accepted the testimony of two of the three youths who testified they witnessed the shooting, it could have concluded that Davis, Griggs, and defendant intended to kill Pretlow by shooting him at close range. Even if defendant's shot was not fatal in itself, the evidence suggested defendant promoted and participated in the commission of the murder by shooting the victim. Therefore, the jury was permitted to convict him as an accomplice because his conduct contributed to causing Pretlow's death. *See State v. Bielkiewicz,* 267 *N.J.Super.* 520, 525–27, 536 (App.Div.1993) (holding that where two co-defendants fired and only one shot caused victim's death, judge obligated to charge accomplice-liability murder). *See Gilliam, supra,* (quoting La Fave and Scott, *Handbook on Criminal Law,* § 59 at 428–429 (1972)):

> Some crimes, such as murder, are defined in terms of acts causing a particular result plus some mental state which need not be an intent to bring about that result. Thus, if A, B, and C have each taken the life of another, A acting with intent to kill, B with an intent to do serious bodily injury, and C with a reckless disregard of human life, all three are guilty of murder because the crime of murder is defined in such a way that any one of these mental states will suffice.

[224 *N.J.Super.* at 763–64]

8

> We are not persuaded defendant's reliance upon two cases from other jurisdictions warrants a different outcome. In *State v. Collins,* 431 *S.E.*2d 188, 190 (N.C.1993), the jury found the defendant guilty of first-degree murder. For the first time on appeal, the defendant argued the judge should have charged the jury on the lesser-included offense of attempted murder. *Ibid.* Evidence at trial demonstrated the victim died of complications from gallbladder disease a month after the defendant's gunshot wound to his chest. *Id.* at 192. Thus, the medical examiner opined "the gunshot wound ... was not the cause of death." *Ibid.* The North Carolina Supreme Court held that the trial court should have charged attempted murder because "one of the elements (causation) of the offense of murder charged in the indictment remained in substantial doubt." *Id.* at 193. Those are not the circumstances here, as the evidence established the shooting caused Pretlow's death.
>
> In *Ledesma v. State,* 761 *N.E.*2d 896, 898 (Ind.Ct.App.2002), the judge instructed the jury on attempted murder as a lesser-included offense of murder over the defense counsel's objection. The jury found the defendant guilty of attempted murder. *Ibid.* The defendant appealed, arguing that attempted murder was not a lesser-included offense of murder. *Id.* at 897. The evidence at trial established the defendant shot the victim twice in the stomach. *Ibid.* After the victim fell to the ground, two other men shot the victim in the back, stomach, and head. *Ibid.* The coroner "stated that the gunshot wounds to the victim's head and neck area were fatal shots and that although the wounds to the chest area were less likely to have been fatal they caused serious injury." *Id.* at 898. The Indiana Court of Appeals affirmed the conviction, finding the trial court did not err by instructing the jury on attempted murder because it was a lesser-included offense of murder and a serious evidentiary dispute existed as to whether the defendant or the other shooters killed the victim. *Id.* at 899–900. The factual circumstances in *Ledesma* differ from the circumstances presented here because the evidence presented was that defendant, Griggs, and Davis shot Pretlow at the same time.

*Crowley*, 2014 WL 3055959, at *5–7 (alterations in original).

Here, the state court's decision was not an unreasonable application of clearly established federal law, and Petitioner has not raised a valid constitutional violation. "The United States Supreme Court and the Third Circuit have made clear that it is not the role of the federal courts to review state court jury instruction rulings that are based on state law." *Howard v. D'Ilio*, No. 14-

9

4758, 2018 WL 1014168, at *5 (D.N.J. Feb. 22, 2018) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Echols v. Ricci*, 492 F. App'x. 301, 312 (3d Cir. 2012)).  Instead, "habeas review of jury instructions is limited to those instances where the instructions violated a defendant's due process rights." *Echols*, 492 F. App'x. at 312.

To warrant relief, a jury instructional error must have "so infected the entire trial that the resulting conviction violate[d] due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Henderson v. Kibbe*, 431 U.S. 145, 154, (1977).  It is not enough for the instruction to be "undesirable, erroneous, or even 'universally condemned.'" *Henderson*, 431 U.S. at 154 (quoting *Cupp*, 414 U.S. at 146).  The Supreme Court has held that petitioners face an "especially heavy" burden, when they base their argument on an omitted instruction, because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155.

With those principles in mind, even if this Court were to construe this claim as a due process claim, the Supreme Court has never recognized that an individual has a due process right to jury instructions on lesser-included offenses in non-capital cases.  *See, e.g.*, *Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("Outside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error."); *Nayee v. D'ilio*, No. 15-1288, 2021 WL 1589352, at *16 (D.N.J. Apr. 23, 2021); *Blank v. D'Ilio*, No. 15-3596, 2018 WL 1919826, at *6–7 (D.N.J. Apr. 24, 2018); *Urcinoli v. Cathel*, No. 05–4776, 2010 WL 5253524, at * 17 (D.N.J. Dec. 17, 2010) ("[B]ecause Petitioner did not face the death penalty, Supreme Court precedent did not require the instruction on the lesser included offenses of manslaughter").  As the Petitioner in this case did not face the death penalty, clearly established federal law did not require the trial court to *sua sponte* charge the jury on the lesser included offense of attempted murder. *Blank*, 2018 WL 1919826, at *6–7; *Urcinoli*, 2010 WL 5253524, at *17.  Similarly, "[b]ecause

this is a non-capital case and involve[d] issues of state law," the Appellate Division, in denying the claim, did not unreasonably apply clearly established federal law. *Howard*, 2018 WL 1014168, at *5.

As to a general due process claim, Petitioner has failed to show that omitting the attempted murder charge "so infected the entire trial that the resulting conviction violate[d] due process." *Cupp*, 414 U.S. at 147. As the Appellate Division reasoned, there was no "rational basis for the jurors to acquit [Petitioner] of the murder charge but still convict him of the proposed lesser offense of attempted murder." *Crowley*, 2014 WL 3055959, at *6. Under New Jersey state law, "[t]he crime of murder under N.J.S.A. 2C:11–3 does not require a specific intent to kill. Purposely or knowingly committing serious bodily injury when death results is a sufficient element. In the crime of attempted murder, no death results." *State v. Gilliam*, 541 A.2d 309, 311 (N.J. Super. Ct. App. Div. 1988). Consequently, the Appellate Division held that if Petitioner "and others intended to kill Pretlow by shooting him and he survived, an attempted murder charge would have been appropriate. However, because the shooting caused Pretlow's death, [Petitioner's] conduct was incompatible with the elements of attempted murder." *Crowley*, 2014 WL 3055959, at *6 (citing *Gilliam*, 541 A.2d at 311).

Alternatively, even if Petitioner did not fire the fatal shot, the Appellate Division reasonably concluded that the jury could have found Petitioner "guilty of accomplice-liability murder." *Id*. Under state law, "[t]o be guilty of accomplice-liability murder under N.J.S.A. 2C:11–3(a)(1) and (2), 'the defendant must intend for the principal to engage in the killing, and the defendant must act with purpose or knowledge in promoting or facilitating the killing.'" *Id*. (quoting *State v. Norman*, 151 N.J. 5, 32 (1997)) (citing N.J. Stat. § 2C:2–6(c)). If the jury accepted the testimony that there were three shooters, as Petitioner suggested, the jury could have

11

concluded that "Davis, Griggs, and [Petitioner] intended to kill Pretlow by shooting him at close range. Even if [Petitioner's] shot was not fatal in itself, the evidence suggested [Petitioner] promoted and participated in the commission of the murder by shooting the victim." *Id*. (citing N.J. Stat. § 2C:2–6(c)).  As a result, the Appellate Division reasonably rejected Petitioner's argument that because he may not have fired the fatal shot, the jury should have received an instruction on attempted murder.

Taken together, Petitioner has failed to show any instructional error, let alone one so prejudicial that it "infected the entire trial" and caused his conviction to violate due process. *Cupp*, 414 U.S. at 147.  In turn, Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable application of clearly established federal law or that its decision was based on an unreasonable determination of the facts.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### b. Flight Jury Instruction

Petitioner contends that the trial court should not have charged the jury on flight.  Petitioner argues that he fled the state for nearly two decades "not to avoid apprehension, but because he feared retaliation from one of the most powerful drug dealing groups," the E-Port Posses. (D.E. 1-2, at 35.)  He emphasizes that the group hunted down and killed one of Petitioner's co-defendants, "hours after the murder." (*Id*.)  Petitioner then alleges that the State had no proof that he sought to avoid apprehension. (*Id*.)

The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on direct appeal.  The Appellate Division denied the claim as follows:

> In Point II, defendant contends the court erred when it granted the State's motion to charge the jury on flight. Defendant does not challenge the language of the specific jury instruction on the flight charge, which defendant acknowledges substantially tracked the

12

model jury charge on flight, *Model Jury Charge (Criminal),* "Flight" (May 10, 2010), and which also, at defendant's request, included an alternate explanation for his departure from New Jersey. Rather, defendant urges there was an insufficient evidentiary basis for the instruction. We disagree.

Whether there exists a sufficient evidentiary basis to support a flight charge is within the trial judge's discretion. *State v. Long,* 119 *N.J.* 439, 499 (1990). An instruction on flight "is appropriate when there are 'circumstances present and unexplained which ... reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid an accusation based on that guilt.'" *State v. Latney,* 415 *N.J. Super.* 169, 175–76 (App. Div. 2010) (alteration in original) (quoting *State v. Mann,* 132 *N.J.* 410, 418–19 (1993)). "The jury must be able to find departure and 'the motive which would turn the departure into flight.' " *Id.* at 176 (quoting *State v. Wilson,* 57 *N.J.* 39, 49 (1970)).

Although evidence of flight is generally admissible, "[t]he potential for prejudice to the defendant and the marginal probative value of evidence of flight," requires the court to carefully consider the manner in which such evidence is presented to a jury. *Mann, supra,* 132 *N.J.* at 420. The probative value of flight evidence therefore depends upon

> the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

[*Ibid.* (quoting *United States v. Myers,* 550 *F.*2d 1036, 1049 (1977)).]

Daniels, defendant's common-law wife, testified that on the night of the shooting, she was threatened by men looking for defendant. When she saw defendant the following month, it was in New York. Defendant told her that he had been shot in the rib area and Griggs had driven him to a hospital in New York, where he told staff that he had been shot while "walking down the street ... [at] a random driveway." She told him about the threats she had received from the men looking for him. Defendant asked Daniels to remain with him but she refused and never saw or spoke to him again,

13

notwithstanding that they shared a child together. Nineteen years later, when apprehended, defendant misrepresented his name and birthdate.

As defendant urges, it is plausible that he left the area out of fear of retaliation from friends or associates of Pretlow, particularly since those individuals went to Daniels' home looking for him and had threatened her. On the other hand, it is equally plausible that defendant fled the area to escape apprehension by law enforcement authorities. He had no further communication with the mother of his child, went to a hospital in New York City for treatment, rather than to a local Elizabeth hospital, and upon apprehension nineteen years later, provided false identity.

Thus, there is substantial evidence of "unexplained circumstances" beyond mere departure which reasonably support an inference that defendant fled with a consciousness of guilt. The fact that evidence supports the additional or alternative conclusion that defendant may have left the area out of fear of retaliation from Pretlow's friends, does not rule out an instruction on flight. Where a defendant produces evidence from which an alternative explanation for departure may be inferred, a "trial court should instruct the jury that if it finds the defendant's [evidence] credible, it should not draw any inference of the defendant's consciousness of guilt from the defendant's departure." *Mann, supra,* 132 *N.J.* at 421. Given the equally plausible reasons for defendant's departure from New Jersey after the shooting, the court appropriately instructed the jury as to what inferences could be drawn from the flight evidence depending upon how it resolved the factual dispute. Moreover, the trial court granted defendant's application to instruct the jury as to the proposed alternative explanation for his flight.

Defendant urges that a charge on flight is only appropriate where the evidence establishes the accused had knowledge that "he [or she] was being sought by the police." We disagree. Evidence of flight need not establish that the accused is fleeing from custody or hiding from the authorities. *Wilson, supra,* 57 *N.J.* at 49. Rather, a flight instruction is appropriate when an inference may be drawn from the evidence that a defendant's motive for leaving the scene was to avoid apprehension for offenses charged in the indictment. *See Ibid.* (stating that a jury may infer a defendant fled the scene of a crime with the intent of avoiding arrest and criminal charges). Those inferences may be drawn from the evidence presented at trial. We therefore conclude the court did not abuse its discretion in charging the jury on flight. *Long, supra,* 119 *N.J.* at 499.

14

*Crowley*, 2014 WL 3055959, at *3–5,

Here, the state court's decision was not an unreasonable application of clearly established federal law, and Petitioner has not raised a valid constitutional violation.  Once again, "it is not the role of the federal courts to review state court jury instruction rulings that are based on state law." *Howard*, 2018 WL 1014168, at *5 (citing *Estelle*, 502 U.S. at 67–68; *Echols*, 492 F. App'x. at 312).  Instead, "habeas review of jury instructions is limited to those instances where the instructions violated a defendant's due process rights." *Echols*, 492 F. App'x. at 312.  To warrant relief, a jury instructional error must have "so infected the entire trial that the resulting conviction violate[d] due process." *Cupp*, 414 U.S. at 147.

Applying those principles here, Petitioner fails to identify any Supreme Court cases that "prohibit a flight charge where the defendant presents an alternative reason for flight." *Rogers v. Hauck*, No. 08-3673, 2009 WL 3584923, at *11 (D.N.J. Oct. 26, 2009).  Nor is this Court aware of any such authority.  *Hawkins v. Horal*, 572 F. App'x 480, 481 (9th Cir. 2014) (noting the absence of Supreme Court precedent on flight jury instructions); *Houston v. Roe*, 177 F.3d 901, 910 (9th Cir. 1999) (same); *see Burton v. Renico*, 391 F.3d 764, 778 (6th Cir. 2004); *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997).

As a general due process claim, Petitioner has failed to show that the flight charge "so infected the entire trial that the resulting conviction violate[d] due process." *Cupp*, 414 U.S. at 147.  Based on the record, the Appellate Division reasoned that there was sufficient evidence to support a flight charge.  *Crowley*, 2014 WL 3055959, at *4.  In particular, the court emphasized that Petitioner "had no further communication with the mother of his child, went to a hospital in New York City for treatment, rather than to a local Elizabeth hospital, and upon apprehension nineteen years later, provided [a] false identity." *Id*.  The Appellate Division reasoned that there

15

was "substantial evidence of 'unexplained circumstances' beyond mere departure which . . . support an inference that defendant fled with a consciousness of guilt." *Id*. The Appellate Division reasonably concluded that there was a "sufficient evidentiary basis to support a flight charge." *Id*.; *see also State v. Latney*, 1 A.3d 741, 745–46 (N.J. Super. Ct. App. Div. 2010) (finding that a flight instruction "is appropriate when there are 'circumstances present and unexplained which . . . reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid an accusation based on that guilt.'" (quoting *State v. Mann*, 625 A.2d 1102, 1106 (N.J. 1993))).

As a result, Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable application of clearly established federal law or that its decision was based on an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B. Destruction or Loss of Evidence Claim

Finally, under Ground Three, Petitioner contends that the destruction or loss of evidence in the case—during his twenty years as a fugitive—violated his due process rights. Petitioner offers little elaboration but appears to believe that the State lied when it said that it had turned over the original case file to the United States Attorney's Office. Based on his brief on direct appeal, Petitioner appears to argue that the trial court should have dismissed the indictment based on the loss or destruction of evidence. (D.E. 11-4, at 33–39.)

The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on direct appeal. The Appellate Division denied the claim as follows:

> In Point III, defendant contends the court should have dismissed the first indictment because "during the twenty years between the homicide and [his] arrest the State lost its entire trial file[,]" and as a result, he was "denied his right to due process of law under the

16

New Jersey Constitution."

"[T]he decision whether to dismiss an indictment lies within the discretion of the trial court, and that exercise of discretionary authority ordinarily will not be disturbed on appeal unless it has been clearly abused." *State v. Hogan,* 144 *N.J.* 216, 229 (1996) (internal citation omitted), *certif. denied,* 149 *N.J.* 142 (1997). Whether a defendant's right to due process has been impermissibly violated due to the destruction or loss of evidence is evaluated by considering three factors: "(1) whether there was bad faith or connivance on the part of the government; (2) whether the evidence suppressed, lost or destroyed was sufficiently material to the defense; and (3) whether defendant was prejudiced by the loss or destruction of the evidence." *State v. Hollander,* 201 *N.J. Super.* 453, 479 (App .Div.) (internal citations omitted), *certif. denied,* 101 *N.J.* 335 (1985).

There is no evidence in the record the State deliberately destroyed or lost evidence. The trial court, after considering testimony from Assistant Prosecutor Ann Luvera, a trial supervisor, who detailed the State's efforts to locate and recreate defendant's file, found there was no evidence the State acted in bad faith. This finding by the court is entitled to deference because it is supported by the record. *See State v. Elders,* 192 *N.J.* 224, 243–44 (2007). There is no evidence the State exhibited official animus towards defendant or engaged in "'a conscious effort to suppress exculpatory evidence.'" *State v. Serret,* 198 *N.J.Super.* 21, 26 (App.Div.1984) (quoting *California v. Trombetta,* 467 *U.S.* 479, 488, 104 *S.Ct.* 2528, 2533, 81 *L. Ed.*2d 413, 421–22 (1984)), *certif. denied,* 101 *N.J.* 217 (1985).

Nor is there any evidence the State withheld exculpatory evidence which was material to defendant's defense. *State v. Mustaro,* 411 *N.J.Super.* 91, 102 (App.Div.2009). To be material, the "evidence must both possess an exculpatory value that was apparent before [it] was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta, supra,* 467 *U.S.* at 489, 104 *S.Ct.* at 2534, 81 *L. Ed.2d* at 422; *Hollander*, *supra*, 201 *N.J.Super*. at 479–80.

"Alternatively, if the defendant cannot establish that the now lost evidence had 'apparent' exculpatory value and can show only that the evidence was 'potentially' useful or exculpatory, then the defendant can show a due process violation by establishing that the evidence was destroyed in bad faith." *Mustaro,*

17

> *supra,* 411 *N.J.Super.* at 103 (quoting *Arizona v. Youngblood,* 488 U.S. 51, 57–58, 109 *S.Ct.* 333, 337, 102 *L. Ed.*2d 281, 289 (1988)). *Accord State v. Marshall,* 123 *N.J.* 1, 109–10 (1991), *cert. denied,* 507 *U.S.* 929, 113 *S.Ct.* 1306, 122 *L. Ed.*2d 694 (1993); *George v. City of Newark,* 384 *N.J.Super.* 232, 243–44 (App.Div.2006). As noted earlier, there is no evidence the State acted in bad faith.
>
> Defendant posits that "[p]erhaps lost photographs" or "other, now unknown [ ] witnesses" may have provided exculpatory evidence on his behalf. The State's case in chief, however, was not largely dependent upon the photographic identification of defendant. Rather, witnesses who identified defendant as one of the shooters and who saw him fleeing the scene immediately after Pretlow was shot, knew him either because of his relationship with Daniels, who lived in the neighborhood where the shooting occurred, or simply knew him from the area. Consequently, the proffered exculpatory evidence to which defendant refers lacked apparent exculpatory value, let alone clear exculpatory value. *See Mustaro, supra,* 411 *N.J.Super.* at 103.
>
> Likewise, there is no evidence defendant was prejudiced by the loss or destruction of the evidence. *Hollander, supra,* 201 *N.J.Super.* at 479. "The omitted evidence must be evaluated in the context of the entire record." *State v. Washington,* 165 *N.J.Super.* 149, 156 (App.Div.1979). We therefore conclude the court did not err in denying defendant's motion to dismiss the indictment because of the loss of the State's file.

*Crowley*, 2014 WL 3055959, at *2–3.

The state court's decision was not an unreasonable application of clearly established federal law. Under Supreme Court precedent, to establish a due process violation based on the loss or destruction of *potentially* exculpatory evidence, a defendant must show (1) that the evidence "possess[ed] an exculpatory value that was apparent before the evidence was destroyed"; (2) that the evidence was material, *i.e.*, the defendant is unable to obtain "comparable evidence by other reasonably available means"; and (3) that the government acted in "bad faith." *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988); *California v. Trombetta*, 467 U.S. 479, 489 (1984).

18

On direct appeal, before the Appellate Division, Petitioner conceded that he could not meet this standard:

> Here, because we have no idea what is missing, it is impossible for the defendant to challenge the court's finding that the State was not aware of the clearly exculpatory nature of the materials before they were destroyed. Nor is it possible to gainsay the finding that the State did not destroy the materials in bad faith. Thus, a break from the traditional framework is necessary in this unique case.

(D.E. 11-4, at 35.) As a result, the Appellate Division reasonably applied *Youngblood* and *Trombetta*, by concluding that Petitioner had failed to demonstrate that the lost evidence had apparent exculpatory value, that it was material, or that the State acted in bad faith. *Crowley*, 2014 WL 3055959, at *2–3. Although Petitioner argued that the Appellate Division should follow other state courts and provide greater due process protections than *Youngblood* and *Trombetta*, those arguments were not based on clearly established federal law, *i.e.*, decisions from the United States Supreme Court. (D.E. 11-4, at 35–36.)

Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable application of clearly established federal law or that its decision was based on an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to habeas relief on this claim.

IV.   **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are

19

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner has not made a substantial showing of a denial of a constitutional right. Accordingly, this Court will not issue a certificate of appealability.

## V. CONCLUSION

For the foregoing reasons discussed, the Court will deny the Petition and will not issue a certificate of appealability. An appropriate Order accompanies this Opinion.

Dated: April 4, 2022

JOHN MICHAEL VAZQUEZ
United States District Judge